JANA SALES CO., Inc.
v.
UNITED STATES.
C.D. 3210; Protest 64/365–7264–62.

United States Customs Court,
First Division.
Nov. 30, 1967.

Siegel, Mandell & Davidson, New York City (Harvey A. Isaacs, New York City, of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Charles P. Deem and Dominick M. Minerva, New York City, trial attorneys), for defendant.

Before WATSON and BECKWORTH, JJ.

WATSON, Judge:

The merchandise in the case at bar, described on the commercial invoice as "Wilton Carpet, Chief Value of Wool, Style No. T. 418/3, 54" Wide," was classified under paragraph 1110 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, at the compound rate of 33 cents per pound and 25 per centum ad valorem. Plaintiff herein claims the merchandise properly dutiable under paragraph 1117 (a) of the said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, at the rate of 21 per centum ad valorem under the provision therein for "Brussels carpets, rugs, and mats; * * * and carpets, rugs, and mats, of like character or description."

The pertinent parts of the tariff act here under consideration are as follows:

Paragraph 1110 of the Tariff Act of 1930, as modified by T.D. 51802, provides in pertinent part:

Pile fabrics, * * * wholly or in chief value of wool, * * * all the foregoing, whether the pile is wholly cut, wholly uncut, or partly cut ............. 33¢ per lb. and 25% ad val.

Paragraph 1117(a), Tariff Act of 1930, as modified by T.D. 54108, provides in pertinent part:

* * * Brussels carpets, rugs, and mats; * * * and carpets, rugs, and mats, of like character or description; all the foregoing regardless of value ............. 21% ad val.

Plaintiff in this case introduced the testimony of one witness, and one witness was called to testify on behalf of the defendant. In addition, there was received in evidence as representative of the merchandise under consideration a piece of rug, marked plaintiff's exhibit 1. Plaintiff's exhibit 2, described as "a piece of Velvet carpet" was received in evidence as plaintiff's exhibit 2 (R.11). It was stipulated between counsel for the respective parties that plaintiff's exhibit 1 was made in the following manner:

Punched cards are produced which activate a jacquard mechanism, which lifts the desired colors for each row of pile. The warp threads which form the piles are drawn from superimposed frames of spools at the back of the loom, the spools in each frame being of a single color.

A wire is inserted and the weft binds the yarn firmly across the wire. The

yarns which are not being used run under the wires of the fabric. When the looming is completed, the wire is withdrawn.

It was further agreed that the merchandise, as imported, was 54 inches wide and that it was imported in rolls of from 48⅛ to 57⅞ yards in length; and that the involved merchandise was imported for and solely used after importation in the manufacture of carpet bags (R.4).

Plaintiff herein called as its witness, Mr. Berkley Urie, employed for over 20 years as salesman by Ernest Treganowan, New York City, which concern is engaged in the selling of floor coverings "all over the country" (R.5). He stated that his firm sells to interior decorators, architects, and designers, and that he supervises the selection and installation of carpets. The record discloses that Mr. Urie has delivered lectures on carpeting at Pratt College in Brooklyn and that he has been involved in the sale or servicing of carpet for over 30 years, during which period he has observed the manufacture of carpets (R.6). The witness testified that the general trade understanding of the term "carpet" would be a fabric "that would have a back and face to it." He identified plaintiff's exhibit 1 as "a piece of Brussels Carpet," stating in this connection as follows:

Q. How do you know?—A. Well, in the first place, it is woven on a jacquard loom. By that, you can tell by the yarns that are hidden in the back, all of the colors don't appear on the face, and this is typical of a Wilton carpet or Brussels carpet, where they disappear, they are buried in the back of the carpet, and that is what is called the hidden value in a Wilton carpet such as this, or a Brussels. This is woven on a Jacquard loom. The only difference is when the wires were withdrawn, it didn't have a knife on the end, and it leaves the pile uncut in a loop like this, and it is described as Brussels carpet.

Q. Are you referring to the difference between Wilton and Brussels?

—A. Yes, the difference is Brussels is an uncut pile like this. A Wilton would ordinarily have a cut pile.

Mr. Urie stated that, at the present time, merchandise similar to plaintiff's exhibit 1 is not produced in the United States but that some 20 or 30 years ago a similar fabric was produced in this country and was used as a floor covering (R.7–8). The witness stated that he had sold and supervised the installation of merchandise represented by plaintiff's exhibit 2, which he identified as velvet "carpeting" (R.9), and that the pile height of plaintiff's exhibit 2 was "approximately the same" as that of plaintiff's exhibit 1 (R.12). He defined the term "pitch" as "the number of warp threads running lengthwise of the carpet," per inch crossways of the weave, which indicates the closeness of the weave of the carpet, and then stated that the pitch of plaintiff's exhibit 2 is about the same as that of plaintiff's exhibit 1 (R.12). Mr. Urie stated that he had observed carpets being used on walls but that he had not seen the particular type of material here imported so used (R.13–14). He further testified that plaintiff's exhibit 1 differs from plaintiff's exhibit 2 in that plaintiff's exhibit 1 is a Brussels carpet woven on a jacquard loom, and "as such has the buried yarn in the back of the carpet," while on plaintiff's exhibit 2 all of the color is on top, and that they are thus different types of carpeting (R.14–15). The witness had never seen merchandise such as plaintiff's exhibit 1 used as floor covering but had, however, seen it in a cleaning plant in which he had worked and to which it had been sent for cleaning "as a carpet" (R.16), the first time in 1930 but that he had not seen it so used within the last 15 or 20 years (R. 19). Concluding his direct testimony, Mr. Urie stated that "assuming" that the merchandise at bar was used exclusively for the manufacture of carpet bags, he still considered it as a piece of Brussels carpet and, upon questioning by the court, further agreed that luggage is made of the same material (R.16).

Upon cross-examination, plaintiff's witness testified as follows:

Q. Would you look at Exhibits 1 and 2, Mr. Urie, and tell the court which of these two, in your opinion, would wear the better?

\* \* \* \* \* \*

THE WITNESS: If they were both subjected to the same wear, I think it would be six of one and half dozen of the other. You would get the same wear out of one as another [R.17–18]. He agreed that there was a possibility of plaintiff's exhibit 2 giving more wear "Because of the quantity of rayon that is in that carpet" (R.18). Mr. Urie then testified that the actual use of a material really has no bearing upon his understanding as to what constitutes "carpet" and that, in order for something to be "carpet," it does not have to be used on the floor but can be used on a wall; that only its physical makeup, i. e., the way it is woven, determines whether or not a material is "carpet" (R.19). The witness had never sold any merchandise like plaintiff's exhibit 1 as floor covering and that to his knowledge, there was no market for this type of merchandise as floor covering in this country in 1961, the date of importation (R.20). On redirect examination, plaintiff's witness stated that there was a market for this type merchandise subsequent to 1930 (R.21).

The defendant called as its witness, Mr. Edwin A. Trell, employed at the time of trial as a sales manager for American Drapery and Carpet Company, whose business is the residential and commercial sale and installation of carpets and drapes (R.22). His duties included the buying of merchandise, supervising installation, supervising salesmen, and other duties in connection with dealing in wool carpeting and carpets. For some 11 years prior to his present position, Mr. Trell was employed as a sales manager for Kaufman Carpet Company, largest retail chain in the United States with 20 or 21 stores (R.23), selling both expensive and inexpensive merchandise. Mr. Trell stated that he was familiar with the whole operation of the Kaufman company as far as the merchandise bought, sold, and dealt with by them was concerned (R.25).

Defendant's witness further testified that he has never seen merchandise like exhibit 1 being used as a floor covering and had never sold nor known it to be sold as a floor covering. In the opinion of the witness, plaintiff's exhibit 1 is not floor covering. Mr. Trell stated that the market at this time, and a few years back did not call for a printed type carpeting of this sort, and that the degree of wearability was a factor, as plaintiff's exhibit 1 will not wear well and that there was a better floor covering made in this country now and prior to 1961 that can be obtained at a cheaper price and which will wear better (R.27–28). He agreed with the testimony of plaintiff's witness that a "carpet" had a face and back (R.28). In the understanding of the witness, carpeting is something that we use for flooring, that is, "something that we in our trade would put on the floor" (R.28). The record then discloses the following:

JUDGE WATSON: Taking Plaintiff's Exhibit 1, feeling the texture of it, in your years of experience as a salesman for the Kaufman Carpet Company, and the American Drapery & Carpet Company, have you ever sold, or seen sold, or seen laid down, carpeting, or any material of that texture and depth, sold as carpeting?

THE WITNESS: It is very hard to define. I would think possibly, yes.

\* \* \* \* \* \*

JUDGE OLIVER: You are testifying now that in your opinion Exhibit 1 is not carpeting, and Exhibit 2 is, is that right? Is that your answer?

THE WITNESS: No. My honest opinion is, as carpeting, I would say they are both carpeting. This is the answer to your question.

JUDGE WATSON: Have you ever seen a carpet used in any other place than on floors, for covering floors?

THE WITNESS: Yes, it is at Lincoln Center. I saw it. I have done

carpeting on the walls myself [R.30–31].

The witness testified in the above connection:

THE WITNESS: Well, it is actually made to be put on floors. It is just a question of quality. At Lincoln Center, the Magee Carpet Company made the fiber for both the floor and the wall. They made an "X" amount of pile for the floor, and they made the same yarn in a much thinner pile for the wall, which it just served as a decorative and acoustical value. To put it on the heavy traffic of the floor of Lincoln Center, on the floor, it wouldn't wear at all [R.31–32].

and at page 32:

JUDGE OLIVER: Didn't you testify that both Exhibits 1 and 2 are floor covering?

THE WITNESS: Carpeting.

JUDGE OLIVER: You don't mean carpeting is something only used on the floor?

THE WITNESS: Not necessarily [R.32].

On cross-examination, defendant's witness testified:

Q. And it is your testimony that Exhibit 1 would be considered in the trade to be carpet?—A. Yes.

and at page 33:

JUDGE WATSON: Plaintiff's Exhibit 1 is made on a loom?

THE WITNESS: Yes. They call it carpeting, and it goes on floors [R.33].

In substance, the defendant contends that only such articles of merchandise are dutiable under paragraph 1117(a), supra, as are "floor coverings."

■ The plaintiff in its brief (page 12) contends that "If Congress intended to limit paragraph 1117(a) solely to floor coverings, this could have been simply accomplished by substituting for the clause 'and carpets, rugs, and mats of like character and description' the phrase 'and floor coverings of like character and description'." The Government, on the other hand, (brief page 6) contends that

the carpets and rugs provided for in paragraph 1117 here under consideration are limited to that class of articles used as floor coverings. In our opinion, consideration of the provisions of paragraph 1117 and, specifically its legislative background, persuades us for reasons advanced below, that said paragraph 1117 must be construed to encompass only that class of articles used as floor coverings.

■ In our determination that the merchandise at bar is not embraced within the provisions of paragraph 1117, supra, consideration of the merchandise covered thereby is deemed particularly significant and indicative of the congressional intent in the enactment of the paragraph in question. In this connection, we deem it pertinent as having a direct bearing on the classification of the involved merchandise that paragraph 1117(c) of the Tariff Act of 1930, provides:

All other floor coverings, including mats and druggets, wholly or in chief value of wool, not specially provided for * * *.

It is a fundamental rule of construction in the interpretation of a statute that all parts of an act relating to the same subject should be construed together and not each by itself. Cf. 2 Sutherland & Lewis, Statutory Construction (1904), § 344, page 659. After enumeration of certain specific articles of merchandise in subparagraphs (a) and (b) of paragraph 1117, subparagraph (c) of paragraph 1117 in its lead phrase provided for "All *other floor coverings*" [italics ours], which, in our opinion, indicates a congressional limitation which applies to the paragraph as a whole and qualified it in its entirety. It is axiomatic in statutory construction that a "later clause or provision may qualify an earlier one." 2 Sutherland & Lewis, supra, page 660. Further, "A statute must receive such reasonable construction as will, if possible, make all its parts harmonize with each other, and render them consistent with its scope and object." 2 Sutherland & Lewis, supra, § 368 at page 708. Subparagraph (c) of paragraph

1117 of the tariff act must be considered in relation to subparagraphs (a) and (b) and as a general expression of the type of merchandise covered by the preceding subparagraphs of said paragraph 1117. Accordingly, it seems clear that the provision for "All other floor coverings" in the relevant paragraph pinpoints the fact that Congress, in providing for carpets and rugs in subparagraphs (a) and (b), was concerned only with those used as floor coverings.

The contention advanced by the defendant in this case that paragraph 1117 of the tariff act is limited to carpets used as floor coverings, gains further support from the data supplied in the Summaries of Tariff Information prepared for the use of Congress when considering the provisions of the relevant paragraph for enactment. These Summaries repeatedly utilize the term "floor coverings" with respect to the merchandise covered by paragraph 1117 of the tariff act here in question.

In the Summary of Tariff Information, 1929, schedule 11, page 1734, prepared for the use of Congress in formulating the Tariff Act of 1930, is found the following, referring to paragraph 1117 of the Tariff Act of 1922, predecessor of paragraph 1117 of the Tariff Act of 1930:

> Description and uses.—The carpets and rugs covered by this paragraph may be divided into four classes.
>
> *    *    *    *    *    *
>
> (2) Wilton, Brussels, velvet, and tapestry carpets form a distinct class, being warp-pile fabrics having a foundation made with warp and filling and a surface made of an extra set of warp threads woven over wires.
>
> The Wilton is a cut-pile fabric and the better varieties rank among the highest examples of machine-made *floor coverings.* *    *    *
>
> The Brussels is a loop (uncut) pile fabric *    *    *. It is made in much the same manner as a Wilton, *    *    *. [Italics ours.]

and at page 1737:

> *    *    * The per capita consumption of domestic wool carpets and rugs was less in 1927 than in 1909. This decrease may be attributed mainly to the increasing use of *hardwood* floors, requiring less carpeting, and the substitution of other types of *floor coverings,* such as felt-base fabrics, linoleums, grass rugs, and also foreign rugs. [Italics supplied.]

At page 1739, the 1929 Summary of Tariff Information makes the following observations:

> The United States ranks as the world's largest producer of wool carpets and rugs. Great Britain, with a highly developed industry, ranks second in quantity and value of products, and is the principal source of imports of machine-made *floor coverings.* [Italics ours.]

Further confirmation that the provisions of paragraph 1117, supra, are limited to floor coverings, is found in the 1921 Summary of Tariff Information. At page 999 thereof, when commenting on the proposed paragraph 1118 of the Tariff Act of 1922 (now paragraph 1117 of the Tariff Act of 1930, substantially unchanged), after enumerating the various articles provided for in the now paragraph 1117, the proponents unequivocally limited the proposed paragraph to "floor coverings," as appears in the following explanation in said summary:

> The *floor coverings thus covered in one paragraph* concisely worded have in past acts required several paragraphs and these were worded more loosely and contained terms which are today obsolete or else designations of varieties covered by other items. [Emphasis added.]

In Summaries of Tariff Information 1948, volume 11, part 2, in regard to paragraph 1117(a), at page 123, we find:

> The Wilton, one of the types classed as (2) above, is a jacquard-figured cut-pile fabric, the worsted type ranking among the finest examples of machine made *floor* coverings. *    *
>
> *    *    *    *    *    *

(a) The Brussels is a jacquard-figured loop (uncut) pile fabric, woven in a similar manner to the Wilton. [Italics ours.]

In United States v. Marshall Field & Co., 18 CCPA 403, T.D. 44642, certain rugs in chief value of wool which were classified for duty under paragraph 1117 of the Tariff Act of 1922 as "rugs similar to Wilton," were held properly dutiable under the catchall floor covering provision of the same paragraph for "all other floor coverings." The Government had contended therein that if the merchandise was not dutiable as rugs "similar" to Wilton, it was dutiable under paragraph 1116 of the same act under the provision for "Oriental * * and other carpets and rugs not made on a power driven loom." In its decision, the court in the *Marshall Field & Co.* case, supra, at page 406 stated:

A consideration of all of the rug and floor covering paragraphs in the Tariff Act of 1922 and the legislative history of the same and prior acts, would seem to compel the conclusion that it could not have been the intent of Congress that merchandise like that at bar should be classified under a provision less specific and more remote than the least specific of the floor covering paragraphs. With this thought in mind, we will, therefore, first determine whether or not the instant merchandise is provided for in paragraph 1116 or 1117.

In the above connection, it appears worthy of note that our Appellate Court therein in discussing the provisions of paragraphs 1116 and 1117 of the relevant tariff act, referred to them as the "rug and floor covering paragraphs in the Tariff Act of 1922."

Plaintiff, in support of its contention that there is no evidence of congressional intent to limit the use of articles described in paragraph 1117(a) to floor coverings, directs our attention to the provisions of paragraph 1118 of the Tariff Act of 1930. In the Summary of Tariff Information, 1929, on the Tariff Act of 1922, compiled by the United States Tariff Commission for the use of the Committee on Ways and Means, House of Representatives, relative to paragraph 1118 of the Tariff Act of 1922 for—

Screens, hassocks, and all other articles composed wholly or in part of carpets or rugs, and not specially provided for,

we find, page 1741, the following:

### ARTICLES MADE FROM CARPETS OR RUGS

Description and uses.—Carpets and rugs are not infrequently used in making other articles. Screens made of such materials are dutiable under this paragraph, as also are hassocks which are thick, hard cushions used for footstools. These are mentioned specifically only as an indication of the scope of the paragraph, which includes any articles made in whole or in part from carpets or rugs, whatever the materials might be, and whether or not any wool be used.

Paragraph 1118 of the Tariff Act of 1930 was enacted in substantially the same language as its predecessor paragraph in the Tariff Act of 1922. While the importer in this case contends that the aforesaid reference in paragraph 1118 to articles made from carpets and rugs indicates that there was no intention on the part of the framers of the 1930 tariff act to limit "carpeting" to use as floor coverings, we are of opinion that paragraph 1118, supra, makes clear the congressional intention to limit paragraph 1117 to those carpets suitable for use on floors, carpets or pieces of carpet used for other purposes or which are suitable only for use for different purposes being otherwise provided for.

As heretofore noted, plaintiff's witness testified that he had never seen carpeting such as plaintiff's exhibit 1 used on the floor, having seen it only in a cleaning plant (R.15). While the witness stated that such merchandise came to his plant for cleaning "as a carpet," no testimony was given as to the ultimate use of the article, whether

826

for floor covering or for other purposes. Further, plaintiff's witness had never sold any merchandise like plaintiff's exhibit 1 for floor covering (R.19–20). He agreed that, at the time of importation, there was no market for this type of merchandise as floor covering in this country. Such testimony is not sufficiently persuasive, in our opinion, to support the contention advanced by plaintiff's counsel that exhibit 1 falls within the class of merchandise employed as floor covering. On the other hand, the witness for the Government, who had a great deal of experience for a number of years in the carpeting field, testified that he had never observed an article like exhibit 1 being used for floor covering (R.26); that he had never sold such an article as floor covering; that there is no market for merchandise of this type as floor covering, and specifically, that its degree of wearability prevents its acceptance as such (R.27). While defendant's witness stated that he considered both plaintiff's exhibit 1 and 2 as "carpeting," he testified that, in his opinion, plaintiff's exhibit 1 "is not floor covering" (R.32). In view of the foresaid testimony, disclosing, in our opinion, that plaintiff's exhibit 1 is not a floor covering, it cannot be said that the imported merchandise belongs to the class of articles provided for in paragraph 1117 here under consideration.

Plaintiff, in the case at bar, in support of its contention that the involved merchandise is properly classifiable under the provisions of paragraph 1117(a), supra, for "Brussels carpets, rugs, and mats; * * * and carpets, rugs, and mats, of like character or description," relies mainly upon the construction placed upon the phrase "of like character or description" by our Appellate Court in United States v. Rietmann Pilcer Co. et al., 24 CCPA 371, T.D. 48830. There, certain rugs of cut pile, in chief value of wool, woven on power looms having jacquard attachments for the creation of the designs, the rugs differing in structure from Wilton rugs only in that all

the wool that went into their manufacture was on the surface while in Wiltons only a part of the wool appears on the surface, the remainder "being embodied in the body of the rug" were held properly classified as rugs "of like character or description" to Wiltons under paragraph 1117(a), Tariff Act of 1930, rather than as "all other floor coverings" under paragraph 1117(c), as claimed by the importers. In our opinion, the situation in the Rietmann Pilcer case, supra, differed, at least in one significant respect, from that in the case at bar. In that case, there was no question but that the involved merchandise was "floor covering." The issue there presented, as stated by our Appellate Court, was limited to the inquiry of whether the rugs there involved were rugs of "like character or description" to Wiltons. Upon the record presented, the rugs in question were held more specifically provided for under paragraph 1117(a) of the Tariff Act of 1930 as rugs "of like character or description" to Wiltons, as classified, rather than as "all other floor coverings" under paragraph 1117(c) of the act, as claimed by the importers. In the case at bar, however, the record, in our opinion, fails to support a finding that the merchandise in question represented by plaintiff's exhibit 1 is "floor covering." In this connection and in support of our conclusion that paragraph 1117 embraces only such articles as are "floor coverings," we deem it of moment to note that the importer in the Rietmann Pilcer case, supra, as stated at page 378 of the decision therein, made the following observation in its brief:

As the court knows of its own knowledge all rugs are more or less similar in that (1) they are used as *floor coverings.* * * * [Italics ours.]

There is nothing in the Rietmann Pilcer case record to indicate that our Appellate Court therein did not take cognizance of the above reference by the importer that rugs "are used as floor

coverings" and it would appear that it did consider the qualifying characteristic as "floor covering" for classification of merchandise under the provisions of paragraph 1117(a) which it found applicable to the merchandise there in question.

In the *Rietmann Pilcer* case, supra, the court held in effect that neither the method of manufacture, nor the type of loom used in the weaving process was decisive of the issue, but that a number of elements must be considered, including structural features (in determining which the processes of manufacture may be looked to for aid), *use*, materials and appearance, it appearing, as also stated by the plaintiff in its brief (page 3), "no one element being determinative of the issue." [Italics ours.] In our opinion, a prime consideration in the classification of merchandise subject to the provisions of paragraph 1117, supra, is whether it meets the test of use as "floor coverings." Accordingly, lacking the prime essential of proof of adaptability or use as a floor covering, for classification under paragraph 1117(a), it is unnecessary to inquire into other but secondary characteristics of the imported merchandise to determine whether "similarity" to Brussels carpet has been established so as to warrant a holding that it is "of like character or description." Suffice to say, that the limiting test of use of the merchandise as floor covering has not been met. As a matter of fact, the record establishes that the imported merchandise was designed and made for a use other than floor covering, and that actually it is nothing more than a "pile fabric" and, as such, has been properly classified by the collector.

We have carefully reviewed and considered other cases to which our attention has been directed by the respective parties in their brief, but in view of our holding that paragraph 1117(a) here in question embraces only such carpets and rugs as are "floor coverings" and our finding that the imported merchandise does not belong to the class of articles provided for in said paragraph, we deem it unnecessary to make any further reference or detailed discussion of the holdings in those cases.

For the reasons heretofore stated, the protest in this case is overruled. Judgment will issue accordingly.

BECKWORTH, J., concurs.